# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARC McCURDY,

       Petitioner,                        2:14-cv-00713-JCM-GWF

vs.                                      **ORDER**

BRIAN WILLIAMS, *et al.*,

       Respondents.

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Marc McCurdy, a Nevada prisoner. ECF No. 10.

I. PROCEDURAL BACKGROUND[1]

On June 22, 2009, the State of Nevada filed a criminal complaint charging McCurdy with (1) driving and/or being in actual physical control while under the influence of intoxicating liquor (after having previously been convicted of a felony DUI), (2) possession of a controlled substance, (3) driving while license revoked/suspended, and (4) failure to maintain travel lane. After a preliminary hearing on February 11, 2010, the State filed an information charging him with the first two crimes, both felonies. Then, on May 25, 2011, the State filed an amended information indicating that it would seek to have McCurdy adjudicated a habitual criminal if he were to be found guilty of either

---

[1] This history was compiled from exhibits filed at ECF Nos. 17, 18, and 28 and this court's own docket entries.

of the charged crimes. The amended information alleged that McCurdy had previously been convicted of the following eleven felonies: (1) in 1978 aggravated robbery with use of a deadly weapon; (2) in 1978 aggravated assault; (3) in 1979 aggravated assault with a deadly weapon and shooting within an occupied dwelling; (4) in 1988 felony DUI (fourth offense); (5) in 1988 felony DUI (fourth offense); (6) in 1988 felony DUI and leaving the scene of an accident involving injuries; (7) in 1993 felony DUI; (8) in 1993 felony DUI; (9) in 1997 habitual offender driving on a revoked license; (10) in 2001 bank robbery; and (11) in 2002 assault with a deadly weapon, discharging a firearm at or into a vehicle and possession of a firearm by ex-felon.

On March 27, 2012, McCurdy entered a guilty plea to driving and/or being in actual physical control while under the influence of intoxicating liquor – a felony. Under the terms of the guilty plea agreement, the State retained the right to argue at sentencing, but agreed to not seek habitual criminal treatment. After a hearing on May 31, 2012, McCurdy was sentenced to a maximum of 180 months in prison with parole eligibility after serving a minimum of 72 months. The judgment of conviction was entered on June 12, 2012. McCurdy did not file a direct appeal.

In October 2012, he filed a state post-conviction petition for habeas corpus relief. After the state district court denied the petition on the merits, McCurdy appealed to the Nevada Supreme Court. In January 2014, the Nevada Supreme Court affirmed the lower court's denial of relief.

In April 2014, McCurdy filed a second state post-conviction petition for habeas corpus relief, then followed that with a third petition in June 2014. In October 2014, the state district court entered an order dismissing the petitions on procedural grounds. McCurdy appealed to the Nevada Supreme Court. In February 2015, the Nevada Supreme Court affirmed the lower court's decision.

McCurdy mailed the federal petition initiating this case on May 1, 2014. On October 27, 2014, he filed the amended petition. On May 26, 2015, respondents filed a motion to dismiss, arguing that Grounds Six and Seven are procedurally defaulted. ECF No. 16. Alternatively,

respondents argued that the Fourth Amendment claim in Ground Six should be dismissed under *Stone v. Powell*[2] or *Tollett v. Henderson*.[3] *Id*. The court granted the motion.

McCurdy's remaining claims are now before the court for a decision on the merits.

## II. FACTUAL BACKGROUND

The transcript of McCurdy's preliminary hearing provides the factual circumstances underlying his conviction.[4]

Theresa Michelle Reynolds, a flagger for Southern Nevada Paving, testified to the following. At 8:00 a.m. on February 23, 2009, she was directing traffic at a road construction site near the intersection of Twain Avenue and Paradise Road in Las Vegas, when she saw a white Cadillac approach the construction site. She signaled the driver (whom she later identified as McCurdy) to stop so a truck could exit the site. The driver stopped, but his car almost hit her. When she turned her sign around to let the driver proceed, she noticed that he was passing out. The driver behind the Cadillac honked, which woke up McCurdy, who then hit the gas and took off quickly.

Approximately fifteen minutes later, Reynolds saw the same white Cadillac approaching from the opposite direction. She saw the Cadillac hit a traffic barricade and knock it into the oncoming traffic lane. The Cadillac then pulled into Maddy's, a nearby bar, and parked. The construction job inspector went over to the parking lot and found McCurdy passed out behind the wheel. The inspector called the police, but before the police arrived, McCurdy woke up and went into the bar.

Ralph Pennington, the bartender at Maddy's that morning, testified to the following. McCurdy was a regular patron at the bar. At 6:30 a.m. on February 23, 2009, he served McCurdy

---

[2] 428 U.S. 465 (1976).

[3] 411 U.S. 258 (1973).

[4] A transcript of the preliminary hearing is filed at ECF No. 28-1.

3

two vodka and ginger ales. After consuming the drinks, McCurdy left the bar at around 7:15 A.M. When he returned around 8:15 or 8:30 a.m., Pennington served him another vodka and ginger ale, but because McCurdy showed clear signs intoxication, he told the other bartender not to serve McCurdy any more drinks. About that time, police entered the bar and asked McCurdy to exit.

Officer Gutierrez testified that McCurdy's speech was slurred, his eyes were bloodshot, he was staggering and disoriented, and his breath smelled of alcohol. He further testified to the following. The flagger identified McCurdy as the driver of the Cadillac. McCurdy failed a one-leg-stand test and a HGN test. Based on his recollection, Officer Gutierrez did not have McCurdy perform the walk-and-turn test because McCurdy could not maintain his balance. He then arrested McCurdy for DUI. Anthony Oblak, a correctional officer at the Clark County Detention Center, testified that a search incident to McCurdy's arrest resulted in the discovery of a clear baggie containing a white substance in his left shirt pocket.

The State presented evidence that the white substance tested positive for methamphetamine and that McCurdy's blood alcohol content, based on blood draw at 9:45 a.m. the morning of his arrest, was .323.

III. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at

5

340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

IV. ANALYSIS OF CLAIMS

**Ground 1**

In Ground 1, McCurdy claims he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel conveyed a plea offer to him prior to consulting with him in person or reviewing the evidence in his case. According to the allegations in Ground 1, McCurdy's counsel, who had been appointed on July 30, 2009, contacted him for the first time on October 2, 2009, by phone. McCurdy claims that counsel told him that the district attorney had made a plea offer of two to five years, but that counsel could not adequately advise him as to the pro and cons of the offer because she had not consulted with him or familiarized herself with the facts of his case (including his criminal history, which qualified him as a habitual criminal under Nevada law). McCurdy further alleges that the district attorney subsequently withdrew the offer and sought to have him adjudicated a habitual criminal, with the result being a less favorable plea agreement.

To demonstrate ineffective assistance of counsel (IAC) in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an

objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

In addressing McCurdy's IAC claims in his state post-conviction proceeding, the Nevada Supreme Court correctly identified *Strickland/Hill* as the governing standard. ECF No. 17-14, p. 2-3.[5] The court addressed the claim alleged herein as Ground 1 as follows:

> [A]ppellant claimed that counsel was ineffective under *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012), for failing to adequately advise him as to whether he should accept an initial plea offer. Appellant contended that counsel told him about the plea offer over the telephone rather than in person, and that she should have explained the facts of the case and the possible habitual criminal sentence that he could face if convicted. Appellant asserted that counsel's inadequate advice led to the State's rescission of that plea offer before he decided to accept it and resulted in his later acceptance of a less favorable plea offer. Appellant's own statements indicate that counsel did in fact convey the plea offer to appellant. *See Frye*, 566 U.S. at ___, 132 S. Ct. at 1408 (holding that counsel was ineffective for failing to communicate a formal plea offer to defendant). Appellant failed to demonstrate that, but for counsel's ineffective advice, he would have accepted the plea, the State would not have withdrawn it in light of intervening circumstances, and the district court would have accepted it. *See Lafler*, 566 U.S. at ___, 132 S. Ct. at 1385; *see also Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222,1225 (1984) (noting that "bare" or "naked" claims are insufficient to grant relief). Therefore, we conclude that the district court did not err in denying this claim.

*Id.* at 3.

The Nevada Supreme Court was correct in concluding that neither *Frye*, nor *Lafler* are on point even if McCurdy's allegations are taken as true. In *Frye*, the Court concluded that defense counsel was ineffective for failing to communicate a potentially favorable plea offer from the prosecution before the offer expired. *Frye*, 566 U.S. at 145. In *Lafler*, the ineffective assistance

---

[5] References to page numbers for documents filed on the court's electronic docket utilize CM/ECF pagination.

7

consisted of defense counsel advising the defendant to reject a plea offer on the grounds he could not be convicted at trial, when that is, in fact, what occurred. *Lafler*, 566 U.S. at 163.

No Supreme Court precedent holds that defense counsel provides ineffective assistance by conveying a plea offer prior to obtaining information about the defendant's case. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'"). Moreover, the record contains no evidence that the State initially made a plea offer of two to five years, but even if it did, the record does not support McCurdy's claim that counsel did not provide McCurdy a meaningful opportunity to consult with her about it.

McCurdy and his counsel, Lauren Diefenbach, appeared together in state court on November 9, 2009 – a fact not mentioned in McCurdy's petition. ECF No. 17-1, p. 4. McCurdy does not specify when State's purported offer was rescinded other than to claim it was "as the case approached preliminary hearing." ECF No. 10, p. 9. However, the preliminary hearing was not held until February 11, 2010, four months after McCurdy's alleged phone conversation with Diefenbach and three months after him appearing with her in court.[6] So, while it may be the case that Diefenbach was not prepared to adequately advise McCurdy about the alleged offer in her initial phone call, he has not established that that remained the case in the several months between the initial phone call and the preliminary hearing.

In light of the foregoing, this court must defer the Nevada Supreme Court's adjudication of Ground 1.

**Ground 2**

In Ground 2, McCurdy claims he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel failed to adequately prepare a defense based on "after

---

[6] Also, while McCurdy alleges, or at least strongly implies, that the State filed its notice to seek habitual criminal status about the same time it rescinded its initial plea offer, the notice was not filed until May of 2011.

the fact drinking" and, after erroneously advising him that such a defense was undermined by a recent Nevada Supreme Court case, coerced him into entering a guilty plea. According to allegations in Ground 2, counsel did not prepare for trial, did not interview important witnesses, did not investigate the blood draw results and the apparent inconsistency between his extremely high blood alcohol content (.323) at booking and the fact he was released shortly thereafter, did not investigate the after-the-fact drinking defense, made no plans to counter the State's expert witnesses, and did not challenge unspecified inconsistencies in the bartender's preliminary hearing testimony. The Nevada Supreme Court case counsel allegedly cited to McCurdy as undermining his defense was *State v. Dist. Ct. (Armstrong)*, 267 P.3d 777 (Nev. 2011).

The Nevada Supreme Court addressed the claim alleged herein as Ground 2 as follows:

> [A]ppellant claimed that counsel was ineffective for failing to adequately prepare for trial. He acknowledged that he was unsure of what investigation counsel performed, but claimed that counsel should have interviewed witnesses, obtained experts, and investigated the blood-alcohol test. Appellant failed to demonstrate deficiency or prejudice, as his claims were bare and unsupported by the record. *See Hargrove*, 100 Nev. at 502, 686 P .2d at 225. Therefore, we conclude that the district court did not err in denying this claim.

ECF No. 17-14, p. 4.

McCurdy has not established a reasonable probability that a more vigorous pre-trial investigation would have improved the result of his criminal proceeding. His suggested defenses – that no police officer saw him drive and that he became intoxicated in the bar after driving – would not have been effective in light of the evidence presented at his preliminary hearing, which he has not shown to be unreliable. Thus, as noted above, Reynolds, the flagger, would have testified at trial that at 8:00 a.m. McCurdy almost hit her with his car, a white Cadillac, that he started to pass out while waiting for her to signal him to proceed, that he was wakened by the driver behind him honking, and that fifteen minutes later on his return trip he hit a traffic barricade and knocked it into the oncoming-traffic lane, and then pulled into Maddy's bar.

Pennington, the bartender, would have testified that he served McCurdy two vodka and ginger ales at 6:30 a.m. and that McCurdy left the bar at around 7:15 a.m. and returned around 8:15 or 8:30 a.m. He would have further testified that he served McCurdy another vodka and ginger ale (which McCurdy did not finish before the police arrived), but decided to cut McCurdy off because he displayed signs of intoxication. Officer Gutierrez would have testified that Reynolds identified McCurdy as the driver of the white Cadillac, that McCurdy's speech was slurred, his eyes were bloodshot, watery and droopy, that he was staggering and disoriented, and that his breath smelled of alcohol. He would have further testified that McCurdy failed a one leg-stand test and a HGN test and that he did not administer the walk-and-turn test because McCurdy could not maintain his balance. Additional evidence available to the State was that a blood draw at 9:45 a.m. showed McCurdy's blood alcohol content to be .323.

The Nevada Supreme Court did not address McCurdy's allegations regarding the *Armstrong* case, but those allegations do not strengthen his claim. In *Armstrong*, the Nevada Supreme Court addressed the relevance and reliability of retroactive extrapolation evidence, which involves a mathematical calculation used to estimate a person's blood alcohol level at a particular point in time by working backward from the time the tested blood sample was taken. *Armstrong*, 267 P.3d 780-33. Other than McCurdy's allegations, the record is silent as to what Diefenbach may or may not have told him about the *Armstrong* case, but in light of the overwhelming evidence that he was guilty of driving under the influence and the strong chance he would be adjudicated a habitual criminal if he proceeded to trial, this court is not convinced that any advice she provided regarding the case was a significant factor in his decision to enter a guilty plea.

Because the Nevada Supreme Court's rejection of the ground is entitled to deference under § 2254(d), Ground 2 is denied.

\ \ \

\ \ \

**Ground 3**

In Ground 3, McCurdy claims he received ineffective assistance of counsel, in violation of his constitutional rights, because, despite the fact that his pre-sentence investigative (PSI) report was full of errors, his counsel advised him that a direct appeal was futile and suggested that he pursue post-conviction relief instead. He further alleges that the errors in the report were the cause of him receiving the maximum sentence for felony driving under the influence given that he did not cause property damage or personal injury.

The Nevada Supreme Court addressed the claim alleged herein as Ground 3 as follows:

> [A]ppellant claimed that counsel was ineffective for failing to provide him with the amended presentence investigation report or consult with him about it before sentencing. Appellant failed to demonstrate prejudice. Appellant failed to identify any specific errors in the presentence investigation report and thus failed to demonstrate a reasonable probability of a different outcome at sentencing but for counsel's alleged deficient performance. [*See Hargrove*, 100 Nev. at 502, 686 P.2d at 225.] Therefore, we conclude that the district court did not err in denying this claim.
>
> . . .
>
> [A]ppellant claimed that counsel was ineffective for advising him not to file a direct appeal. Appellant failed to demonstrate deficiency or prejudice. The record and appellant's own statements indicate that counsel advised him that a direct appeal would not be successful but that she would file an appeal if he wished her to do so. Thus, counsel did not deprive appellant of a direct appeal. Further, to the extent that appellant claimed that he did not seek to appeal based on his counsel's erroneous advice, appellant failed to demonstrate that either of the arguments he wished to raise on direct appeal—that his presentence investigation report contained errors and that the State violated the plea agreement—had any merit. *See Toston v. State*, 127 Nev. ——, ——, 267 P.3d 795, 799–800 (2011). Thus, we conclude that the district court did not err in denying this claim.

ECF No. 17-14, p. 4-5.

The fundamental defect with this claim is that McCurdy fails to specify what errors were present in his PSI report or how they may have impacted his sentence. According to the correspondence he relies upon as evidence supporting this claim, the only error of any consequence whatsoever was a miscounting of how many times McCurdy had been incarcerated – i.e., twelve

11

rather than nine or ten. ECF No. 8, p. 36. Given McCurdy's criminal history, it is highly unlikely such a minor discrepancy caused the state court to impose a harsher sentence.

McCurdy also misrepresents his counsel's advice inasmuch as she offered to file an appeal on his behalf, but informed him that the court's sentencing decision was lawful and would be upheld. ECF No. 8, p. 34-35. Such advice was not erroneous. *See Randell v. State*, 846 P.2d 278, 280 (Nev. 1993) ("A sentencing judge is allowed wide discretion in imposing a sentence; absent an abuse of discretion, the district court's determination will not be disturbed on appeal."). In addition, counsel did not advise McCurdy that the sentencing issue was more appropriately raised in a post-conviction proceeding rather than a direct appeal. Instead, she merely informed him that, if he insisted on filing a motion to modify his sentence, he would have to do that himself and offered to withdraw as his attorney should he decide to pursue post-conviction relief. ECF No. 8, p. 36-37.

Here again, McCurdy has failed to establish that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law or that it was based on an unreasonable determination of the facts.

Ground 3 is denied.

**Ground 4**

In Ground 4, McCurdy claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel failed to object to numerous errors in his PSI report. He further alleges that his PSI report was revised multiple times and that he did not receive the final version until after his sentencing hearing, so counsel did not provide him an opportunity to review the report with her prior to the hearing.

Again, petitioner does not specify the nature of the errors appearing in the final PSI report. To the extent he may be referring to the number felony convictions and/or DUI convictions on his record, the court suggested at the sentencing hearing that even if the number were lower, it was beyond that which would warrant any leniency. ECF No. 28-4, p. 3-4. Moreover, after the

prosecutor outlined McCurdy's criminal history, the court asked McCurdy if he wanted to respond. *Id*., p. 4. He raised no objections to the prosecutor's recounting of his criminal record. *Id*, p. 4-5. Instead, he merely referred to a letter he had written regarding his efforts to reform himself since the time of the offense.

The Nevada Supreme Court's determination that McCurdy failed to show prejudice under *Strickland* was not unreasonable. Ground 4 is denied.

**Ground 5**

In Ground 5, McCurdy claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel did not show him the plea agreement until minutes before the change of plea hearing and, rather than provide him an opportunity to read or review it, told him to tell the court no one had promised him anything and that he understood and agreed to the agreement. He further alleges that the State breached the plea agreement by asking the court to sentence him as a habitual criminal.

The Nevada Supreme Court addressed the claim alleged herein as Ground 5 as follows:

> [A]ppellant claimed that counsel failed to object to the State's violation of the plea agreement during sentencing when the State argued for a habitual criminal sentence. Appellant failed to demonstrate deficiency or prejudice. Appellant's claim that the State violated the plea agreement is belied by the record as the State did not argue for habitual criminal treatment but rather argued for the maximum sentence under the DUI statute, which the State was allowed to do under the terms of the plea agreement. *See Hargrove*, 100 Nev. at 502–03, 686 P.2d at 225. Thus, we conclude that the district court did not err in denying this claim.
>
> . . .
>
> [A]ppellant appeared to claim that his plea was unknowingly and involuntarily entered because he did not read the agreement before entering his plea and he was not canvassed about it. This claim is belied by the record, as he was canvassed about the plea agreement and affirmatively stated that he had read and understood the plea agreement before he signed it. *See Hargrove*, 100 Nev. at 502, 686 P.2d at 225. Thus, we conclude that the district court did not err in denying this claim.

ECF No. 17-14, p. 4.

13

U.S. Supreme Court precedent recognizes a right under the Due Process Clause to have one's guilty plea be both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). The Court in *Boykin* held that, to satisfy this requirement, the record must show that the defendant was made aware that he was waiving his privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to a trial by jury, and the right to confront one's accusers. *Id*. at 243. The Court has identified other prerequisites for a plea to be considered knowing and voluntary. For example, a guilty plea is voluntary for due process purposes only if a defendant has received notice of the true nature of the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). In addition, a guilty plea is not "voluntary," and thus invalid, when it is the product of threats, improper promises, or other forms of wrongful coercion. *See Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of guilty is voluntary and knowing only if it is "entered by one fully aware of the direct consequences" of his plea. *Id*. at 755.

The guilty plea agreement McCurdy signed, together with the trial court's plea canvass, satisfied the foregoing constitutional requirements. ECF Nos. 17-4 and 28-3. McCurdy has not overcome the strong presumption that he understood the nature of the charges against him and the rights he was waiving and that he voluntarily entered his guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that the petitioner's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity").

The record also supports the Nevada Supreme Court's finding that the State did not violate the plea agreement. The plea agreement explicitly provided that McCurdy's guilty plea exposed him to a minimum term of not less than two years and a maximum term of not more than 15 years (ECF No. 17-4, p. 3), which was the statutory penalty for a felony DUI committed by person with a prior felony DUI conviction. *See* Nev. Rev. Stat. § 484C.410. By contrast, Nevada's habitual criminal statute mandates a sentence of not less than five years and a maximum term of not more than 20

years for persons with two prior felony convictions and a sentence of either 25 years (with parole eligibility after ten years), life (with parole eligibility after ten years), or life without the possibility of parole for persons (like McCurdy) with three prior felony convictions. *See* Nev. Rev. Stat. § 207.010.

Rather than argue for a sentence under the habitual criminal statute, the State merely argued for the harshest possible sentence for the DUI conviction. ECF No. 28-4. Because there was no violation of the plea agreement, counsel was not ineffective in failing to object to the State's sentencing argument.

The Nevada Supreme Court's rejection of the Ground 5 is entitled to deference under § 2254(d). Thus, Ground 5 is denied.

V. CONCLUSION

For the reasons set forth above, McCurdy's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

15

Having reviewed its determinations and rulings in adjudicating McCurdy's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any procedural issues or any of McCurdy's habeas claims.

**IT IS THEREFORE ORDERED** that the amended petition for writ of habeas corpus (ECF No. 10) is DENIED. The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

Dated September 20, 2017.

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE